UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-218-GWU

DIANE M. SIZEMORE, PLAINTIFF,

VS:  MEMORANDUM OPINION

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,[1]  DEFENDANT,

INTRODUCTION

Diane Sizemore brought this action to obtain judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits (DIB). The case is before the Court on cross-motions for summary judgment.

APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

---

[1] On February 12, 2007, Michael J. Astrue replaced Jo Anne B. Barnhart as the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, he should be substituted as the defendant in this action.

    4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

    5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

    6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

    7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d

2

654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.

3

Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an

4

occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual."  20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments."  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Sizemore, a 34 year-old former nurse's aide and cashier with a high school education, suffered from impairments related to degenerative disc disease and a mood disorder.  (Tr. 15, 20).  While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of medium level work.  (Tr. 24).  Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 24).  The ALJ based this decision, in part, upon the testimony of a vocational expert.  (Tr. 22-23).

The Court must first determine the time period relevant to this appeal. Sizemore alleged an onset date of October 30, 1995 on her DIB application.  (Tr. 55).  The claimant's DIB-insured status expired on December 31, 2000.  (Tr. 23).

5

Thus, the plaintiff must prove she became disabled within this time period to qualify for DIB.  A very different time frame is applicable to the SSI claim. Sizemore's SSI application had a protective filing date of March 22, 2004.  (Tr. 398).  The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date.  Casey v. Secretary of Health and Human Services, 987 F.2d 1230, 1233 (6th Cir. 1993).  The time period relevant to the SSI claim runs from the March 22, 2004 protective filing date through the February 3, 2006 date of the ALJ's final decision in this action.  Because of the wide time differential in the applicable time periods between the two claims, evidence pertinent to one claim will not necessarily be relevant to the other. Therefore, each time period will have to be separately considered.

The hypothetical question initially presented to Vocational Expert James Flynn included an exertional limitation to medium level work along with such non-exertional restrictions as (1) an inability to use her hands for overhead reaching; (2) a need to avoid exposure to dust, fumes, smoke, chemicals and hot or cold environments; and (3) an inability to climb ladders or scaffolds.  (Tr. 432).  In response, the witness identified a significant number of jobs which could still be performed.  (Tr. 432-433).  The ALJ then added a need to avoid exposure to vibrations. (Tr. 433).  Flynn reported that the available job numbers would not be affected by this additional limitation. (Tr. 433).  The ALJ then added a restriction to light level work with a sit/stand at will option.  (Tr. 433-434).  The witness again identified a significant number of available jobs.  (Tr. 434).  Finally, the ALJ presented to Flynn a hypothetical question limiting one to sedentary level work restricted from a full range by such non-exertional limitations as (1) an inability to more than occasionally stoop, crouch or crawl; (2) the need for a sit/stand at will option; (3) an inability to use her hands for overhead reaching; (4) a need to

avoid exposure to vibrations; and (5) a "limited but satisfactory" ability to deal with the public, co-workers, and maintain attention and concentration for extended time periods. (Tr. 437-438). In response, the expert again cited a significant number of jobs in the national economy which could be performed. (Tr. 438). The ALJ relied upon this testimony to find Sizemore not disabled.

With regard to the time period relating to Sizemore's DIB claim, the record reveals no restrictions which contradict the hypothetical factors presented to Flynn. The plaintiff was apparently seen by Dr. William Ashburn in December of 2000 for some blood testing and this is the only evidence dated from the pertinent time period. (Tr. 173). The claimant essentially concedes that her condition did not became serious until August of 2003, when she began treatment with Dr. James West. <u>Plaintiff's Brief in Support of her Motion for Summary Judgment</u>, p. 4, Docket Entry No. 9. Therefore, the plaintiff has failed to meet her burden of prove for the time period relating to her DIB claim and the undersigned must affirm this portion of the ALJ's decision.

The evidence relating to the time frame pertinent to Sizemore's SSI claim is very different. Dr. West, a treating source, reported the existence of far more severe physical restrictions than those found by the ALJ on several occasions. (Tr. 221, 356, 384). Dr. Gopal Rastogi, an examiner, stated that the plaintiff would be unable to perform gainful activity. (Tr. 268). The ALJ rejected these opinions as binding. (Tr. 17, 19). However, the only physician whose opinion specifically contradicts the examining sources was that of Dr. David Swan, a non-examining medical reviewer, who noted that the plaintiff was restricted to a limited range of medium level work. (Tr. 311-319). The problem with reliance upon Dr. Swan is that the physician saw the record in August of 2004 and relied primarily upon the modest findings of Dr. William Brooks, an examining source,

who saw the claimant in June of 2004. (Tr. 175-177). The reviewer did not see Dr. Rastogi's December, 2004 report or the numerous treating notes of Dr. West which were dated after this time (Tr. 199-231, 355-356, 384-396). Furthermore, the record does contain objective evidence suggesting that Sizemore's physical condition deteriorated after Dr. Swan's August, 2004 review. A November, 2004 MRI Scan of the lumbar spine was noted to show progression of his disease since an earlier February, 2004 MRI scan which had been seen by Dr. Brooks. (Tr. 222). Dr. Rastogi reported dulled sensation in the right foot and toes in December of 2004 (Tr. 268) which is contrary to Dr. Brooks finding of no sensory loss the previous June (Tr. 176). Therefore, at least some objective evidence appears to support the examiner's opinions and under these circumstances, reliance upon the reviewer was not proper.

The Court also notes that the hypothetical factors presented to Flynn did not fairly characterize Sizemore's mental status during the time period relevant to the SSI claim. Psychologist Crystal Sahner, an examiner, reported that the plaintiff would be "moderately" limited in her ability to tolerate work stress and pressures, a factor not presented to the vocational expert. (Tr. 181). Psychologists Jay Athy (Tr. 301) and Edward Ross (Tr. 306) each reported that the claimant would be "moderately" limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. These factors were also not presented to Flynn. Somewhat troubling is the fact that the ALJ included no mental restrictions in his actual findings concerning Sizemore's residual functional capacity. (Tr. 24). Therefore, further consideration of the plaintiff's mental condition is required.

The undersigned concludes that with regard to Sizemore's condition during the time period relating to her DIB claim, the administrative decision

should be affirmed.  However, with regard to the time period relating to her SSI claim, this part of the decision must be reversed and remanded to the Commissioner for further consideration.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 21st day of February, 2007.

Signed By:

*G. Wix Unthank*

United States Senior Judge